UNITED STATES DISTRICT COURT
for the
DISTRICT OF RHODE ISLAND

JESSE SANDERS

      *v*.                                     C.A.No.: 20-cv-
                                               **Plaintiff Demands a Jury Trial**

FRITO-LAY, INC. and
FL TRANSPORTATION, INC.

## **COMPLAINT**

1.     This is a claim for equitable and declaratory relief and for damages for violation of the Rhode Island Fair Employment Practices Act, R.I.G.L. §28-5-1, et seq., the Rhode Island Civil Rights Act, R.I.G.L. §42-112-1 et seq., 28 U.S.C. 2000(e) and 2000(e)-3, also known as Title VII of the Civil Rights Act of 1964, 42 U.S.C §1981 and/or the Connecticut Fair Employment Practices Acts, Conn. Gen. Stat. § 46a-60 (§46a-51 et seq.).

2.     The plaintiff filed a charge with the Rhode Island Commission for Human Rights, 20 ERA 188-06/50, and thereby the Equal Employment Opportunity Commission, 16J-2020-00138, and has received a Right to Sue and has thereby satisfied any and all administrative prerequisites to suit.

3.     The plaintiff filed a charge with the Connecticut Commission for Human Rights and Opportunities, Case Numbers 2040336 and 2040360, and thereby the Equal Employment Opportunity Commission, 16A-2020-00423 and 16A-2020-00940, and has received a Release of Jurisdiction and has thereby satisfied any and all administrative prerequisites to suit.

Parties

4.   Complainant Jesse Sanders is a resident of the State of Rhode Island and Providence County therein.

5.   The defendant Frito-Lay, Inc. is a foreign corporation operating within the State of Rhode Island, with a business location within the State of Rhode Island and with sufficient minimum contacts with the State of Rhode Island for this Court to exercise jurisdiction over the defendant.

6.   The defendant FL Transportation, Inc. is a foreign corporation operating within the State of Rhode Island, with a business location within the State of Rhode Island and with sufficient minimum contacts with the State of Rhode Island for this Court to exercise jurisdiction over the defendant.

7.   The defendants, though distinct legal entities, operate as one entity in the employment of delivery drivers.

8.   The defendants engage in business and have employees performing their duties within the state of Rhode Island.

9.   The plaintiff herein did perform duties of his employment within the State of Rhode Island.

Statement of Facts

10.  The complainant is a black man.

11.  The defendants had knowledge and were aware of the complainant's race.

12. The defendants are employers as that term is defined by R.I.G.L. §28-5-6, 42 U.S.C. §2000(e) and Connecticut Fair Employment Practices Acts, Conn. Gen. Stat. § 46a-51.

13. In or about March 2019, Jesse J. Sanders and three other black men, Sylvester Clyde, Frederick Gunn, and Richard Evan were hired by the defendants.

14. Jesse J. Sanders, Sylvester Clyde, Frederick Gunn, and Richard Evan were hired by the defendants as drivers servicing the northeast region including Rhode Island.

15. During his employment with the defendants, the defendant routinely and regularly performed the duties of his employment within the State of Rhode Island.

16. Jesse J. Sanders, Sylvester Clyde, Frederick Gunn, and Richard Evan were presented documentation welcoming them to Frito-Lay and in the performance of their duties were required to wear apparel that identified them as representatives of Frito-Lay, Inc.

17. Jesse J. Sanders was paid by FL Transportation, Inc.

18. Jesse J. Sanders, Sylvester Clyde, Frederick Gunn, and Richard Evan were placed in orientation classes with one other new hire at that time, a white male.

19. Plaintiff's orientation took place in part in Killingly Connecticut and in part at the defendants' location in Cranston, Rhode Island.

20. During a day of orientation classes, on or about March 11, 2019, one of the complainant's instructors, Mrs. Kelly L., entered the class room and informed the black employees that the local police were outside looking for one of the black guys in the room.

21. The defendants' supervisor's statement regarding the local police was false and without basis and was made solely to demean the black employees in the training.

22.     The defendants and the union in which the defendants' employees belong work together to organize and supervise the work environment and job duties of the defendants' employees.

23.     On or about March 15, 2019, complainant, for himself and on behalf of the other black employees present, approached the union steward and informed that person of the improper and discriminatory actions of the defendants' supervisory employee.

24.     Upon information and belief, the union steward provided complainant's report of discrimination to the management of the defendants.

25.     Upon information and belief, the defendants took no action to remedy or address the improper actions of its supervisory employee.

26.     After complainant's report of the discriminatory action of the defendants' supervisory employee, a protected activity, on his own behalf and that of the other black employees present, complainant was targeted with continual retaliation in the form of continued and repeated attempts to terminate his employment based on false and fictitious factual allegations.

27.     The other black employees present, and on whose behalf complainant reported the discriminatory actions, were also subjected to retaliation.

28.     On or about April 14, 2019, complainant was provided inadequate resources for completion of his work related duties.

29.     On or about April 14, 2019, the defendant, by and through its representatives, did seek to have complainant expelled from the union for allegedly crossing a picket line.

30. The allegations made against the complainant as set forth in the preceding paragraph were false and fictitious and complainant was able to prove them false and fictitious with video and/or photographic proof.

31. On or about May 2, 2019, complainant was informed that his information regarding call back time as previously provided by the supervisor Mrs. Kelly L. in orientation was in error and she, falsely, denied he ever provided this information.

32. On or about May 5, 2019, complainant was accused of improper cleaning of his vehicle without any proof thereof and in direct contradiction to the statements of the driver next assigned to the same vehicle.

33. In or about May 2019, complainant was warned by other co-workers to document all his work product as management was targeting him for termination and in response thereto, complainant began, by photograph and video, documenting his work actions.

34. In or about April and/or May 2019, Richard Evans, a black male, referenced above, was provided the wrong size trailer for deliveries and was required to follow a proscribed path as set by the computer system used by the defendants resulting in the trailer striking a bridge requiring Mr. Evan's to exceed the hourly allotted time on the road for which he, in part, was terminated.

35. Mr. Evan's termination was based on the actions of others and was pretextual and retaliatory.

36. On or about June 16, 2019, complainant was accused of failing to complete certain tasks relating to his employment.

37. The allegations made against the complainant as set forth in the preceding paragraph were false and fictitious and complainant was able to prove them false and fictitious with video and /or photographic proof.

38. A number of times and specifically on or about June 22, 2019, complainant arrived at his employment to procure runs and the runs available were withdrawn and held by dispatch to the benefit of drivers who were late arriving, all of which were Caucasian.

39. On or about July 7, 2019, complainant utilized a specific vehicle to perform his job duties and, based on the prior warning he had received that he was being targeted, photographed the vehicle to document its condition.

40. Within a week of July 7, 2019, complainant was interrogated regarding damage done to the vehicle complainant had utilized on or about July 7, 2019 at which time, complainant was able to establish by photographic proof that any damage was not caused by him.

41. In or about July and August 2019 a number of times and specifically on or about August 22, 2019, complainant's work duty details from his supervisors, and specifically his trip paperwork, were provided with errors and omissions that materially affected complainant's ability to perform his job duties.

42. In or about July and/or August 2019, Frederick Gunn, referenced above, was accused of improper use of language as grounds to terminate his employment.

43. The allegations made against Frederick Gunn as set forth in the preceding paragraph were false and fictitious and Mr. Gunn was able to prove them false and fictitious with audio recording proof.

44. In or about August 2019, Frederick Gunn referenced above was called in for a termination hearing based on the false allegation of using profane language and was in fact terminated for false and fictitious reasons which were new and different from the initial allegations and for which the defendants violated its own policies and procedures.

45. During his employment with the defendants, the defendant routinely and regularly performed the duties of his employment within the State of Rhode Island.

46. On or about September 13, 2019, complainant was accused of causing damage to a vehicle he utilized to perform his job duties on September 1, 2019.

47. The allegations made against the complainant as set forth in the preceding paragraph were false and fictitious and complainant was able to prove them false and fictitious with video and /or photographic proof.

48. On or about September 11, 2019, complainant was informed that a complaint had been received regarding his performance of his job duties that day.

49. The allegations made against the complainant as set forth in the preceding paragraph were false and fictitious and complainant was able to prove them false and fictitious with video and /or photographic proof.

50. On or about October 30, 2019, while working within the State of Rhode Island, plaintiff's vehicle suffered a mechanical issue making it unable to move and plaintiff requested assistance from the defendants.

51. On or about October 30, 2019, in response to plaintiff's request for assistance, the defendants. Without cause, did fail and refuse to provide plaintiff any requested assistance leaving him stranded with his vehicle.

52. Beginning in or about October and/or November 2019, the defendant, by and through its representatives, being unable to create grounds to terminate complainant, began reducing his work shifts and job duties.

53. The reduction in complainants work shifts and thereby his income were targeted and in further retaliation for his protected activity as set forth above.

54. During the period that complainant was suffering reduced assignments of work, other non-minority employees with less seniority were being awarded greater amounts of work.

55. During the period that complainant was suffering reduced assignments of work, the white male employee, driver, hired at or about the same time as complainant was being assigned a greater amount of shifts, routes and work.

56. Kelly L., the employee of the defendants and supervisor referenced in paragraph 10 above, did ask complainant "Is it true that all black people like watermelon and fried chicken?"

57. Numerous times during his employment, complainant orally informed his supervisors that he was being subjected to discriminatory and retaliatory treatment

58. On or about November 9, 2019, complainant, in an attempt to report the ongoing discrimination and retaliation to which he was subjected, contacted PepsiCo Speaks Up.

59. Upon information and belief, there was nothing done to address complainant's report of discrimination and retaliation as set forth in the preceding paragraph .

60. In or about November 11-23, 2019, complainant took leave to care for his mother who was suffering health related issues and reported the need for this leave to his supervisor.

61. On or about December 1, 2019, complainant confirmed with the defendants and his union steward that he was taking family and medical leave to care for his mother and that he was being taken off the schedule for work.

62. On or about December 27 or 28, 2019, complainant received a letter from the defendants stating that he was terminated for no call, no show.

63. Defendants grounds for terminating complainant were false and fictitious and in violation of state and federal medical leave laws.

64. Sylvester Cyler, a black man and employee of the defendant, referenced above, has suffered retaliatory treatment in that the defendants has forced Mr. Cyler to return to work from medical leave and ignored required accommodations and created false allegations of his failure to provide medical documentation.

65. During complainant's employment with the defendant, he and the other three black men hired at the same time as him were four of only six black employees of the in excess of one hundred employees performing the same job duties at the location form which they were dispatched.

66. The actions of the defendants constitute discrimination and retaliation based on complainant's race and engaging in protected activity.

67. The actions of the defendants have caused plaintiff a loss of income, emotional distress and other damages.

68. The actions of the defendants constitute a violation of the Rhode Island Fair Employment Practices Act, R.I.G.L. §28-5-1, et seq., the Rhode Island Civil Rights Act, R.I.G.L. §42-112-1 et seq., 28.U.S.C. 2000(e) and 2000(e)-3, also known as Title VII of the Civil Rights Act of 1964, 42 USC §1981 and/or the Connecticut Fair Employment Practices Acts, Conn. Gen. Stat. § 46a-60 (§46a-51 et seq.).

## COUNT I
*Discrimination – 42 U.S.C. §2000e (Title VII of the Civil Rights Act of 1964)*

69. Plaintiff restates all previous paragraphs by reference as if stated fully herein.

70. The defendants did violate Title VII by the facts described herein, by discriminating against him with respect to hire, tenure, compensation, terms, conditions or privileges of employment because of his race.

71. As a result, he has suffered and continues to suffer damages.

WHEREFORE, plaintiff respectfully requests this Honorable Court award him compensatory damages and all other damages authorized by statute, as well as his costs of litigation and reasonable attorneys' fees pursuant to statute.

## COUNT II
*Retaliation – 42 U.S.C. §2000e (Title VII of the Civil Rights Act of 1964)*

72. Plaintiff restates all previous paragraphs by reference as if stated fully herein.

73. The defendants did violate Title VII by the facts described herein, by retaliating against him because he opposed a practice forbidden by 42 U.S.C. §2000(e) and engaged in protected activity in the form of complaints of discrimination.

74. As a result, he has suffered and continues to suffer damages.

WHEREFORE, plaintiff respectfully requests this Honorable Court award him compensatory damages and all other damages authorized by statute, as well as his costs of litigation and reasonable attorneys' fees pursuant to statute.

## COUNT III
*Discrimination – 42 U.S.C. §1981*

75. Plaintiff restates all previous paragraphs by reference as if stated fully herein.

76. The defendants did violate 42 U.S.C. §1981 by the facts described herein, by discriminating against him with respect to hire, tenure, compensation, terms, conditions or privileges of employment because of his race.

77. As a result, he has suffered and continues to suffer damages.

WHEREFORE, plaintiff respectfully requests this Honorable Court award him compensatory damages and all other damages authorized by statute, as well as his costs of litigation and reasonable attorneys' fees pursuant to statute.

## COUNT IV
*Retaliation – 42 U.S.C. §1981*

78. Plaintiff restates all previous paragraphs by reference as if stated fully herein.

79. The defendants did violate 42 U.S.C. §1981 by the facts described herein, by retaliating against him because he opposed a practice forbidden by 42 U.S.C. §1981 and engaged in protected activity in the form of complaints of discrimination.

80. As a result, he has suffered and continues to suffer damages.

WHEREFORE, plaintiff respectfully requests this Honorable Court award him compensatory damages and all other damages authorized by statute, as well as his costs of litigation and reasonable attorneys' fees pursuant to statute.

## COUNT V
*Discrimination - R.I.G.L. § 28-5-1 et seq.*

81. Plaintiff restates all previous paragraphs by reference as if stated fully herein.

82. The defendants did violate R.I. Gen. Laws §28-5-6, the Rhode Island Fair Employment Practices Act, by the facts described herein, by discriminating against him with respect to hire, tenure, compensation, terms, conditions or privileges of employment because of his race.

83. As a result, he has suffered and continues to suffer damages.

WHEREFORE, plaintiff prays this Honorable Court award him compensatory and consequential damages pursuant to Rhode Island General Laws 28-5-24(b) including but not limited to lost income and punitive damages pursuant to Rhode Island General Laws 28-5-29.1 as well as his costs of litigation and reasonable attorneys' fees pursuant to Rhode Island General Laws § 28-5-24(a) and such other relief as the Court deems appropriate.

## COUNT VI
*Retaliation - R.I.G.L. § 28-5-1 et seq.*

84. Plaintiff restates all previous paragraphs by reference as if stated fully herein.

85. The defendants did violate R.I. Gen. Laws §28-5-6(5), the Rhode Island Fair Employment Practices Act, by the facts described herein, by discriminating against him because he opposed a practice forbidden by FEPA and engaged in protected activity in the form of complaints of discrimination.

86. As a result, he has suffered and continues to suffer damages.

WHEREFORE, plaintiff prays this Honorable Court award him compensatory and consequential damages pursuant to Rhode Island General Laws 28-5-24(b) including but not limited to lost income and punitive damages pursuant to Rhode Island General Laws 28-5-29.1 as well as his costs of litigation and reasonable attorneys' fees pursuant to Rhode Island General Laws § 28-5-24(a) and such other relief as the Court deems appropriate.

## COUNT VII
*Discrimination - RIGL §42-112-1 et seq,*

87. Plaintiff restates all previous paragraphs by reference as if stated fully herein.

88. The defendants did violate R.I.G.L. §42-112-1, the Rhode Island Civil Rights Act "RICRA", by the facts described herein, by discriminating against him with respect to hire, tenure, compensation, terms, conditions or privileges of employment because of his race.

89. As a result, he has suffered and continues to suffer damages.

WHEREFORE, plaintiff prays this Honorable Court award him compensatory, consequential and exemplary damages as well as the costs of litigation and reasonable attorneys' fees pursuant to Rhode Island General Laws § 42-112-2 and such other relief as the Court deems appropriate.

## COUNT VIII
*Retaliation - RIGL §42-112-1 et seq,*

90. Plaintiff restates all previous paragraphs by reference as if stated fully herein.

91. The defendants did violate R.I.G.L. §42-112-1, the Rhode Island Civil Rights Act "RICRA", by the facts described herein, by the facts described herein, by discriminating against him because he opposed a practice forbidden by RICRA and engaged in protected activity in the form of complaints of discrimination.

92. As a result, he has suffered and continues to suffer damages.

WHEREFORE, plaintiff prays this Honorable Court award him compensatory, consequential and exemplary damages as well as the costs of litigation and reasonable attorneys' fees pursuant to Rhode Island General Laws § 42-112-2 and such other relief as the Court deems appropriate.

## COUNT IX
*Discrimination – C.G.S. § 46a-60 et seq.*

93. Plaintiff restates all previous paragraphs by reference as if stated fully herein.

94. The defendants did violate C.G.S. § 46a-60 et seq, the Connecticut Fair Employment Practices Act, by the facts described herein, by discriminating against him with respect to hire, tenure, compensation, terms, conditions or privileges of employment because of his race.

95. As a result, he has suffered and continues to suffer damages.

WHEREFORE, plaintiff prays this Honorable Court award him compensatory and consequential damages pursuant to Connecticut General Statutes § 46a-104 including but not limited to lost income as well as his costs of litigation and reasonable attorneys' fees and such other relief as the Court deems appropriate.

## COUNT X
*Retaliation – C.G.S. § 46a-60 et seq.*

96. Plaintiff restates all previous paragraphs by reference as if stated fully herein.

97. The defendants did violate C.G.S. § 46a-60 et seq, the Connecticut Fair Employment Practices Act, by the facts described herein, by discriminating against him

because he opposed a practice forbidden by FEPA and engaged in protected activity in the form of complaints of discrimination.

98. As a result, he has suffered and continues to suffer damages.

WHEREFORE, plaintiff prays this Honorable Court award him compensatory and consequential damages pursuant to Connecticut General Statutes § 46a-104 including but not limited to lost income as well as his costs of litigation and reasonable attorneys' fees and such other relief as the Court deems appropriate.

**PLAINTIFF DEMANDS A TRIAL BY JURY**

Respectfully submitted,
JESSE SANDERS
By and through his attorney,

David S. Cass, RI #5044
One Davol Square, 4th Floor
Providence, RI 02903
(508) 889-2674
Fax: (401) 272-2708
david@davidcasslaw.com